*503 OPINION OF THE COURT
James B. Canfield, J.
Petitioner commences the instant proceeding, pursuant to CPLR article 78, seeking a judgment of the court annulling respondents’ March 2, 1995 determination, which denied his application for reimbursement from the Lawyers’ Fund for Client Protection, and directing respondents to pay petitioner the sum of $78,632, plus costs and interest to date. In support of the petition herein, petitioner argues that the challenged determination is not supported by substantial evidence, and is arbitrary, capricious and contrary to law.
Respondents oppose the relief sought by petitioner in the instant proceeding.
As an initial matter, the court finds that, notwithstanding the fact that petitioner has obviously alleged in his petition that respondents’ determination is not supported by substantial evidence, the instant proceeding will not be transferred to the Appellate Division under CPLR 7804 (g) because no formal hearing was held pursuant to law. Thus, this court will maintain jurisdiction of the instant proceeding and render a disposition of the petitioner’s claims herein.
On December 30, 1992, petitioner filed a statement of claim with respondent the Lawyers’ Fund for Client Protection relative to the refusal of his attorney, Bertram Zweibon, to return to petitioner a sum of money in excess of $100,000 which Mr. Zweibon had in his escrow account. Apparently, on September 23, 1992, Mr. Zweibon had filed for the protection of the United States Bankruptcy Court. In his bankruptcy petition, Mr. Zweibon listed petitioner and his daughter as a nonsecured creditor for a $60,000 debt, which was characterized as a loan. He was eventually granted a discharge in bankruptcy by order dated November 26, 1993. Mr. Zweibon, it seems, also pleaded guilty to one count of grand larceny in the second degree in Supreme Court, County of New York, and, on November 23, 1992, was sentenced to a period of incarceration of 1 to 3 years.
By determination letter dated June 30, 1993, respondents denied petitioner’s statement of claim on the ground that his claim did not qualify for reimbursement. In said letter, respondents advised petitioner that the evidence submitted in support of his claim did not satisfy the legal standard that reimbursement for losses will occur only in situations involving the misappropriation or willful misapplication of law clients’ funds within an attorney / client relationship and the practice of law.
*504 On July 13, 1994, petitioner sought a reconsideration of that determination under 22 NYCRR 7200.11 and was subsequently granted same. However, by determination letter dated December 16, 1994, respondents confirmed their original determination, stating the same grounds for denial. Petitioner was advised that said determination was final. Undaunted, petitioner filed an application for reimbursement with respondents on February 16, 1995. That application was similarly denied by respondents by determination letter dated March 2, 1995. Petitioner was advised at that time that respondents were closing their claim file in this matter. The instant article 78 proceeding followed.
In support of the petition herein, petitioner maintains that the funds were clearly stolen by Mr. Zweibon and that the Lawyers’ Fund for Client Protection was established to reimburse clients such as himself who are the victims of their attorney’s dishonesty. Petitioner unequivocally argues that the funds in question never constituted a loan to Mr. Zweibon but were in Mr. Zweibon’s possession by virtue of an attorney/ client relationship. Petitioner maintains that his attorney, a convicted felon, obviously stole his money and that the determination denying him reimbursement from the Lawyers’ Fund for Client Protection is not supported by substantial evidence and is clearly erroneous, arbitrary and capricious.
In opposition to the relief sought by petitioner herein, respondents argue that the evidence uncovered during the course of their investigation into this matter led them to conclude that the money which Mr. Zweibon failed to pay back to petitioner occurred in the context of a relationship of lender/ borrower and not that of attorney / client.
Respondents maintain that the funds in question were provided to Mr. Zweibon for investment purposes and did not involve his representation of petitioner as his attorney. Respondents argue that documentation exists which clearly indicates that the money involved was a loan to attorney Zweibon and that he was to pay said loan back in installments. Moreover, Mr. Zweibon himself advised respondents that this was definitely a loan and not a misappropriation of a law client’s funds. They further determined that Mr. Zweibon defaulted on what was a personal loan and not the theft of a law client’s money.
Respondents also point out that, although he had the statutory grounds and an opportunity to oppose Mr. Zweibon’s discharge in bankruptcy under 1978 Bankruptcy Code (11 USC) § 523, petitioner failed to do so.
*505 Respondents contend that the purpose of the Lawyers’ Fund for Client Protection is to reimburse for lawyer theft, not to make good on bad debts. Thus, on the basis of their investigation, respondents concluded that petitioner’s claim was not reimbursable under the Lawyers’ Fund for Client Protection.
Judiciary Law § 468-b, entitled "Clients’ security fund of the state of New York”, states, in pertinent part, "[T]he board of trustees shall have the sole discretion to determine the merits of claims presented for reimbursement, the amount of such reimbursement and the terms under which such reimbursement shall be made” (Judiciary Law § 468-b [4]). Thus, it is clear that applications for reimbursement are committed to the sole discretion of the individual respondents, who constitute the board of trustees of the Clients’ Security Fund of the State of New York.
It is well settled that, upon judicial review of an administrative agency’s determination, the court may not substitute its judgment for that of the agency and must confine itself to resolving whether the determination was rationally based (Matter of Medical Malpractice Ins. Assn. v Superintendent of Ins. of State of N. Y., 72 NY 2d 753, 763). Further, in reviewing respondents’ interpretation of Judiciary Law § 468-b and its implementing regulations, the court will defer to their expertise unless that interpretation is irrational or runs counter to the clear wording of the statute (Matter of Medical Malpractice Ins. Assn. v Superintendent of Ins. of State of N. Y., supra, at 761-762).
In the case at bar, the court finds that the record clearly indicates that respondents had a more than sufficient basis for their conclusion that Mr. Zweibon did not misappropriate or willfully misapply petitioner’s money in the practice of law, but that the loss of petitioner’s funds occurred in a relationship of lender/borrower. Unfortunately for petitioner, that distinction, albeit a fine distinction, has to be made in the case at bar.
It further appears to the court that respondents had a reasonable and rational basis to conclude that petitioner had failed to provide evidence of a reimbursable loss under the legal standards of the Lawyers’ Fund for Client Protection. Finally, the court finds that respondents’ interpretation of Judiciary Law § 468-b and its implementing regulations is neither arbitrary nor capricious and that the denial of petitioner’s statement of claim and application for reimbursement was a proper exercise of their discretion (Judiciary Law § 468-b [4]).
*506 Thus, having ascertained, that respondents’ determinations are warranted by the record herein and that a rational basis for same exists, the court’s inquiry necessarily ends here (Matter of Howard v Wyman, 28 NY2d 434, 438).
Therefore, the instant petition is denied and this proceeding dismissed in its entirety.